All right, next case on the docket is in the interest of T.G., N.G. and E.G., minors, cause number 5-16-0231, and Tonya Cullison. Is that right? Okay. Fortunately, somebody wrote the name out next to it there. You know, it's a good read. I'm having a little trouble reading the signature.  Okay, please, the court. For the record, it's Tonya Garcia Cullison, and I come from Richland County this morning. I represent the Rostock father, Timothy G., and with the court's permission, I'd like to just address him as Tim, just for the sake of making my arguments easier to follow. There were several issues in this case because, obviously, it's a termination of parental rights, so you have two statutes, which is the adoption statute and the juvenile statute. So I started first just looking at the main issue was this father was not present, physically present, during his termination. Can you tell us how he could have been got there? Well, if you look at the record, he's in federal court. Federal prison? Federal prison. And there were about 10, as I counted in the record, about 10 habeas corpus writs sent from the court to Peking, and there were several phone calls made by the state's attorney and his attorney, Mr. Holt. So there were a lot of attempts made. The response was always the same from the warden. I don't have to honor anything. I'm a federal lawyer. Does that have something to do with the supremacy clause? It has everything to do with the supremacy clause. So in my research, that was, to me, it was the toughest situation because it was so challenging to find some kind of rule or case law, and it doesn't exist. However, if you look at Sentowski v. Kramer, a Supreme Court decision that says, we're going to follow the Matthews factors, the three factors set by Matthews for due process situations, to basically find out when this response to process rights protected. And the second element, which is the risk of the procedure used by the court, which in our case was telephonic. And just so I understand, it was telephonic, and at his end, he could hear everything else  Yes. And then he could also speak over the telephone. Correct. And it's a big courtroom, but it's about this size. And what they do is they have a phone on this end. And so the tables are exactly that same distance, and the judge is very cognizant of having everyone speak loud, because we've done this a couple times. But then I looked back in the record, and I found 27 instances where this respondent kept saying to the court, I can't hear what is happening. I don't understand. And that was very disturbing, because I'm thinking, OK, if the second factor in Matthews says that you have to look at the procedure that was chosen and what risk it may have, then my interpretation, of course, is, well, there was a big risk that they took because it is obvious from the record that he didn't have the opportunity to hear. So we'll have that tape where we can hear what was transpired and him saying, I can't hear? Mm-hmm. And in fact, if you look at the transcripts, it's all there. OK. It's all there. And again, it's the history of the transcript. So that was our first argument on the due process violation, that we don't believe that there was enough protection there for his due process rights. And then the second thing was that he... So what should have been done? He should have been present. OK. And if you can't get... And that's what I understood your argument to be. Your argument, in your brief at least, is not there should have been better technology or anything like that. It's he should have been present. Absolutely. So what do we do? Wait until he gets out of prison in 2024 or whatever it's... In 2025, however, I did attach in my reply a copy of the letter that he has received that his sentence has been reduced from 180 months to 155 months. He has a Rule 35 pending for cooperation. So I started doing the numbers, and if it's day for day, he will be out in two years if it's 85%, probably three to three and a half years. Well, it's 85% in federal court. Correct. And so he's serving his sentence in federal prison, right? Yes, he is. So let me get back to my question. If he has to be present and the federal government won't give him up to be present, and it's pretty clear they weren't going to, then do we ignore the policy set forth in Juvenile Court Act in the state of Illinois that children need certainty and that these cases are being moved along? No, Your Honor. Not at all. What I found was, because I spent a lot of time researching, and what I found was there is a view, which is the federal marshals have discretion to transport prisoners. It is at their discretion. They don't have to, but it is at their discretion. And I found some, when I did my little research, as a matter of fact, last week,  to ask on a state court order to transport a prisoner. If they deemed with their discretion. And what if they say no? As it has been said in this case, do that. Absolutely. And then we're back where we started. Because he wouldn't be physically present. And they're in line. So how do we set a standard that says he must be physically present? Because the federal government has absolute discretion over whether to bring a federal prisoner to state court. That is correct. Well, I again always fall back on Matthews. The second standard says risk of error created by the states in the chosen procedure. If you have a respondent that is fighting for his constitutory protected right to have a relationship with his children, and the record is showing you that this respondent, by the vehicle that was chosen, which is telephonic, is adhering to the procedure process, then what are we saying? But how will this order you're suggesting be any more effective than the habeas? Well, and again, it's... If it's totally discretionary. It is totally in order that we have authority to enforce. Correct. And the reason I'm asking for it to be remanded for a new trial is to give us another opportunity to do this because of the importance of this matter and because we know that he had difficulty hearing. But again, it is catch-22. I don't have the answer to that. How was he prejudiced by not being present? He was prejudiced by not being present because he couldn't hear all of the procedure. And he was also prejudiced... There's nothing... Okay, he didn't hear, but there was no post-trial motion after it was all over in which he said, if I could have heard this, I could have testified to that, or because I didn't hear, I didn't call this witness, I could have called, or anything like that. And in fact, as far as the substance of this case, you're up here arguing... The basis of your main arguments are his testimony. Yes. And he did testify and was cross-examined. He did. However, you always fall back on the reality of that. How much deference can be given to this situation? As the statute says, great deference are given to the lower courts when they're determining termination cases. When a judge isn't able to see the witness, to judge their veracity or credibility, all of that, and the witness isn't able to see the testimony, to see the other witnesses, this respondent was at a loss from day one. However, it seems to me that his background had a huge amount to do with the outcome. I mean, he had quite a record of felonious convictions. Yes, he did. He had about six felonies. He served time three times. But if you look at the record, and again, look at the case law where it says every case you have to judge by their particular past. Well, it wasn't that any of the priors weren't even related to drugs. No, they weren't. They were all... Right. They were all theft and credit card and forgery. But if you also... I mean, his record tells a story. If you also look at his record, you notice that from 2002 to 2012, from the time that he was arrested for and charged with and pled to methamphetamine conspiracy, he was clean. He was raising his children. Although, it hit me pretty strongly that when the arrest was made, there were children in the house, when they were manufacturing. Yes. His children. His children were present. When they were manufacturing meth. Yes. Yes, they were. They were present. So, I mean, I don't... It's hard for me to imagine that depravity was not... It seems like pretty overwhelming evidence in support of a depravity finding. I disagree in that if you look at... Every case that I looked at talked about depravity of a parent who, yes, had all the convictions. And that's in black and white. That's indisputable. But they also talked about parents who were continuously incarcerated during the life of the children. The respondent was not. The respondent had 10 years of being outside and clean and during the life of these children up until he was arrested. You said outside and clean. Meaning he wasn't arrested for any crimes. Was there proof that he was not using during that entire 10 years? No, there wasn't. Just ask him. Absolutely. We know when he got caught. Yes. Okay. Correct. But what I'm saying is that in the court record, the only comment made about the state's comment about him not having any convictions during 10 years prior was their only comment was, well, we find that interesting. Well, that has to be taken into consideration when you look at all the facts. This is a man who obviously has shown that he has some moral sense of what is right. He was raising his children up until... In a meth manufacturing environment. Yes, that is true. That is true. And that was when he was arrested in 2012, in November. That is very true. This is a very difficult case. But I believe from the record there is enough to say and to warrant another look at another opportunity at this defendant. Excuse me, at this respondent. We have a situation where he has shown great interest in his children. He has maintained... He requested visitation. He had visitation every month through GCF. He sent birthday cards. He asked to be transferred from Berlin, New Hampshire to Illinois to be close to them. He wanted very much to be there at every hearing as best as he could. This is a man who wants an opportunity to be with his children, to raise his children. And given all the circumstances and if there is one possibility, even before we get to the best interest because the two-pronged test says you can't even get to the best interest until you get to the unfitness. I believe that if there's an opportunity as light as it may be that if we can bring him into this courtroom and see his veracity and let him testify and let him see his witnesses there is a possibility that the court would not find him unfit. And if he's found unfit then we couldn't go to the best interest hearing. But again, his convictions are what they are. His criminal record is what it is. There's no denying that. Thank you, Your Honor. Thank you. Mr. Daly? Good morning, Your Honor. May it please the Court and the Counsel. One quick administrative comment. The reply brief has a copy of what looked like an order that had reduced the respondent's sentence down from 180 months. I would ask this Court to order the court clerk to redact his last name from that appended material that required by the court rules. I'm sure it's an inadvertent but I can't say, maybe I've mistaken myself but I know SAS is preparing for this. Okay, granted. Thank you, Your Honor. With regards to the presence of the respondent, I am in accord with counsel with regards to the number of times that the respondent had indicated he was having difficulty hearing. It was something of a striking thing. I do note, though, that in conjunction with that, he was obviously very free to make it clear at any point that he was having a hard time hearing that he would interject and say that he was having a hard time hearing. The Court was very conscientious about acknowledging the parties to speak more loudly so that they could be heard. Obviously, there's limitations on the technology and it would have been better for you to sort of Skype or something like that but I don't know what the circumstances of either the federal prison or the courthouse itself. But I think if you look at the due process test in Matthews, it's the third or the second prong which is really kind of one that comes into play here because there's obviously strongly competing interests both the private interest of the respondent, the governmental interest in terms of its parental role of minors in the state that the case that the Court relied upon made clear that you can't just ignore the limitations that are imposed upon a hearing because of someone's incarceration but there has to be some kind of accommodation but it has to be obviously an accommodation that's reasonable and reasonably related to the circumstances and in that case C.G.F. is the name of the court that said that should have done would be something like set up some kind of tall fine or continue the case for a year which apparently is when that respondent would have been released and then but that obviously is dependent upon the circumstances of the case and of course as this Court has noted it's going to be a number of years before this particular respondent is going to be out of federal custody so I think that when you look at the totality of the circumstances the Court did the best that it could after having made obviously repeated attempts fruitlessly to have the respondent present for the hearing so does the record reflect I mean is this a Department of Justice policy it appears to be the warden's policy so does it go from warden to warden some wardens transport federal inmates for state civil cases and some don't or everything I say here is absolutely speculative okay so there's nothing in the record anyway the record wasn't really developed actually some told us an email from the ward to say your request has been denied but I would imagine there's probably some discretion counsel talks about federal marshal as discretion that wasn't raised below it wasn't even raised in a reply brief I'm not going to jump up and down in a new wave waiver but I think that if that's true and I have no reason to doubt it nonetheless it doesn't really alter the circumstances in that it's still there's no compulsory process the state court undertake to happen there so this is the court did the best it could and again I know that whatever the limitations were that particular procedure the court was attentive to it and ensured the best it could that this respondent could hear participate and as the court noted did testify was cross-examined and participated and there was no specific mention made by counsel below that my client said he's missed half his hearing he has no idea what's going on there's nothing to that effect to preserve a particular problem with the way the procedure was undertaken so I think that in some of the due process tests this court employs and I think the court below similarly employed it in reference to that appellate court decision which discusses Matthew's the court's actions were appropriate under the circumstances so there was no error in that regard with regards to depravity I'm going to focus on depravity the court actually found unfitness on several grounds if the court has any questions on anything apart from depravity I'd be happy to answer them as this court is aware this court needs only finding unfitness on one ground in order to sustain the circuit court's finding there was no challenge raised here to the best interests finding so that's it really kind of rises or falls here on finding unfitness was against the manifest weight of the evidence we would have to find it was against the manifest weight of the evidence on all grounds correct if it's sustained on one we affirm but in order to reverse we would have to find unfitness on all grounds that's the natural corollary obviously is that we would have to be all grounds against the manifest and naturally there was sufficient evidence on all grounds why do you think there are two grounds that really jump out depravity and repeated incarceration but I'll just discuss depravity here the statutory provision which allows unfitness on depravity creates a presumption that the respondents have three felonies one of them within five years one of them three felonies at least one of them within five years of the filing of the petition to terminate parental rights depravity has been discussed by the courts as involving essentially an inherent deficiency of moral sense of rectitude and they had a respondent that essentially had an inability to conform with accepted society and now as Justice Chatham noted this respondent has a fairly considerable string of felonies almost all of them in the mid to late nineties and I think there's no conviction that had taken place or prosecutions that were aware of there was referenced in the record to an arson prosecution or arson case pending in Arkansas I'm not going to rely on  record but I do know that I think the respondent testified that he was released from prison in 2003 or 2004 so that's really the time period we need to be charged and convicted with a very serious federal drug offense so apart from not being really sufficient to establish a lack of conformity the most current case very recently prosecuted almost contemporaneously with I don't think that that's really a very persuasive basis to say that the respondent is rebutting this finding the factual predicates for depravity in this case I would also note that when we talk about conforming to the predication of probation that had been imposed on those convictions originally so it's almost like a double whammy you're convicted you're given a chance to stay out of prison and you screw up and then you put into prison so it sort of buttresses the finding of depravity in that regard now obviously the respondent has to have a fair opportunity to rebut this presumption because absolute presumptions are prohibited in this case the respondent did present evidence which the court found to be inadequate to overcome the presumption when I think you look at the things the respondent presented I think we could probably characterize him fairly as this he was doing something some things and that's often the case where people in prison they'll take courses and they presented some evidence which appeared to be related to job type things that might be when he gets out of prison I think there's one course he took parenting from a distance which didn't provide a particularly illuminating source of rebuttal for the court to draw upon the respondent indicated that he was taking his GAD courses classes but he obviously hadn't completed it what was distressing to me wasn't brought up so much below but I think it should be considered by this court here was that he was in prison for a drug offense but it doesn't appear that he was taking any kind of courses or classes or counseling or anything related to drugs which would seem to be the first and foremost thing and I know that that's not just me sort of throwing it out there that's actually part of DCFS's plan at the outset of the children being taken into DCFS care after the dispositional hearing so I think that's one other factor that this court should look at I also think that while there's some interaction with this father and the children it felt very light now we can say that DCFS is maybe somewhat responsible for that because they're the ones who set up perhaps the monthly phone calls and obviously direct person-to-person visitation wasn't going to happen under these circumstances so you have to sort of work within the parameters that were handed because of the state but because of the respondent but nonetheless we have to look at it from the respondent's perspective of what can they do reasonably under the circumstances well he did have monthly calls it doesn't appear that he really attempted to have any more monthly calls and it appears from those phone calls that didn't take place they were probably the same unproductive would be an understatement you know and I think a lot of that has to do with the fact that there's really not it's very difficult I think to sort of firm up a relationship between very young children and someone who's on telephone and maybe the only way to do that is to build up a certain level of familiarity between the children and his father because one of them was taken away just after he was born so there's some difficulty there but there is some reference to birthday cards we don't know when how much to whom they were sent I think one thing that jumps out is that the respondent I think probably indicated that he was making money in prison but there's no indication that any of that money was ever being put aside for these children's use so was there anything in the record about how much money he was making no because my experience is it's very minimal you're not going to make $100,000 a year but nonetheless zero it's more than zero I mean you don't have a lot of expenses in prison either it's more than zero so I think when we look at the totality of all those circumstances from the court's perspective and from this standard of review and determining whether the circuit of this court is finding or against the manifest weight of the evidence clearly they were not sufficient to overcome this justice chairman noted overwhelming evidence of this particular respondent's depravity so that's all I'm going to argue regarding this court's purposes so we ask this court to affirm the determination of this respondent's problem thank you Mr. Mayor Ms. Cousin may reply just to address some of the issues that counsel did bring up one of the problems that the respondent had with his visitation is that he had no control of how they were being done visitations were being done from the DCFS office with the caseworker over the phone and a lot of it was very disorganized and the kids were running out of access and the access is not  it's not directly dictated by him it's dictated by DCFS by those who do it he did send birthday cards and in fact the record will show you and there was a lot of testimony regarding this that he made several inquiries to the DCFS worker about how the kids were doing in school and he requested pictures and they did send him pictures some testimony said that they sent him pictures three times and that was the state's only witness Jennifer Griffith some testimony said she said that she sent him pictures every month so there's a question about how many pictures he got he was receiving information about the welfare of his children the other issue is that we were looking to see we don't know still today what the bonding was with this respondent and his children and that's very important one of the things is about talking about is he how much he's concerned what his relationship with his children numerous numerous times a bonding assessment was requested by the court by the respondent's attorney by the respondent's attorney the reason she won't go to federal court excuse me to the federal prison and the reason she won't go is because they don't have a facility that is adequate for that kind of assessment so that was one of the difficult aspects we had in this case because everyone else had a bonding assessment the biological father of the older child the biological father of the older child had a bonding assessment but nothing was done with this respondent and so that is still eight months old eight months old yes the other thing that he did take the record indicates that while he was in Berlin Massachusetts imprisoned there for a year before he was transferred to Peking he took 40 hours of drug counseling he also took psychological evaluation counseling by Dr. Davis in Peking that information was never given to it was never subpoenaed and the court never had that information so we don't even know what happened there but he did try as much as he could to do as much as the plan had asked of him again within the restraints of his incarceration and what transpired  mother the mother surrendered her rights yes she signed waivers of surrender with consent for adoption she signed her waiver in 2015 so that was done quite a while ago yeah she's she's out she's just she walked away from that in the totality of this case it's a very difficult situation for this person but the reality is that he is there our whole premise was when we looked at the record that we believe that given the circumstances of the hearing and the history of his issues with not being able to hear everything and really participate and be judged physically and the fact that there's a slight even though it's a slight there's a possibility that we could possibly bring him into court working through the federal markets and again I just learned of this and also the credit of the state because in his reply to my brief he said you say that it's not even likable and he should be here but you're not giving me any case law or anything give me something and so I did spend a lot of time finding and I finally found something that's that they had the discretion so all right thank you your time is up so thank you both for your arguments and your briefs and we'll take this matter under advisement this is an expedited appeal the decision is due by October 29th and it will be filed by that date so thank you we're gonna take a brief recess and return at ten o'clock for the case at ten o'clock